In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2379

LISA KING, as the Special Administrator
for the Estate of John P. King,

*Plaintiff-Appellant*,

*v.*

SUE KRAMER and
LA CROSSE COUNTY, WISCONSIN,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:10-cv-00123-wmc — **William M. Conley**, *Chief Judge*.

ARGUED JANUARY 8, 2014 — DECIDED JULY 10, 2014

AMENDED OPINION ISSUED AUGUST 14, 2014

Before BAUER, WILLIAMS, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. John King was in police custody awaiting his probable cause determination in April 2007. After being rapidly tapered off his psychotropic medication by the jail medical staff, complaining of seizure-like symptoms,

and being placed in an isolated jail cell for seven hours, he was found dead. The administrator of his estate, Plaintiff-Appellant Lisa King, has pursued this civil suit against La Crosse County and various individual employees of the County for over four years. In the course of this long litigation, our court has already once ruled on an appeal concerning the propriety of summary judgment. We held that a genuine issue of material fact existed as to whether the County had an official policy or custom of unconstitutionally depriving inmates of their prescribed medications. *King v. Kramer*, 680 F.3d 1013, 1020–21 (7th Cir. 2012) ("*King I*"). We also held that there was a genuine issue of material fact as to whether jail nurse Sue Kramer was liable for John King's death, viewed through the deliberate indifference lens of the Fourteenth and Eighth Amendments. *Id.* at 1019–20. We thus remanded the case for further proceedings.

In June of 2012, the case was returned to the district court for trial. Six weeks before the trial date, after what appears to have been an unsuccessful settlement discussion, King's counsel asserted in a letter to Defendant-Appellees that the correct standard to be used for the jury instructions in the upcoming trial was one of objective reasonableness, not the deliberate indifference standard that had been used by both parties thus far in the pleadings, the summary judgment briefing, the subsequent appeal, and the recent pretrial preparations. Plaintiff-Appellant's assertion was correct as a matter of law, but shortly after receiving the letter, Defendant-Appellees filed a motion in limine arguing that King should be precluded from arguing the applicability of the objective reasonableness standard because of her tardiness in asserting the argument. The district court agreed with De-

fendant-Appellees and ordered that the case be tried as scheduled under the deliberate indifference standard.

The jury returned a special verdict finding that, while John King did have a serious medical need on April 18, 2007, Kramer had not been deliberately indifferent to John King's serious medical need. It also found that La Crosse County did not have an official policy of denying access to prescribed medication without appropriate oversight by a physician. King moved to alter or amend the judgment on several grounds, including that the court improperly denied her the use of the correct Fourth Amendment standard, but the district court denied the motion. It reiterated its finding that King had waived the Fourth Amendment claim by failing to pursue it on a timely basis.

King appeals the district court's use of the deliberate indifference standard, instead of the objective reasonableness standard, in the jury instructions and verdict form. We originally issued an opinion on July 10, 2014, reversing and remanding for further proceedings. Defendant-Appellee La Crosse County filed a petition for panel rehearing, and we requested an answer, which was filed. Rehearing by the panel with respect to the claim against Defendant-Appellee La Crosse County only was granted without the need for additional argument or submissions. Consequently, the July 10, 2014 opinion was withdrawn. In this amended opinion, we reiterate our ruling as to Kramer. We find that King's long, unexplained delay in asserting the correct standard is puzzling and problematic, but that the district court abused its discretion by failing to provide a sufficient explanation of how Defendant-Appellee Kramer would suffer prejudice as a result of this delay. We therefore reverse the verdict

reached in Kramer's favor and remand to the district court for a new trial.

However, because the verdict in favor of La Crosse County did not turn on the constitutional standard at issue, we clarify that the district court's judgment is affirmed as to the County.

**I**

We discussed the tragic circumstances surrounding Mr. King's death at length in *King I*, 680 F.3d at 1015–17, and we adopt that background. Here, we summarize the circumstances surrounding the dispute over the proper legal standard.

On November 27, 2012, King's counsel emailed Defendants' counsel, stating that he wished to inform them of a "development in the law." King's counsel cited *Ortiz v. City of Chicago*, 656 F.3d 523 (7th Cir. 2011), a case decided in August 2011, for the correct proposition that the Fourth Amendment objective reasonableness standard, not a deliberate indifference standard, should apply in evaluating the medical care provided to a pretrial detainee awaiting a probable cause determination. King's counsel did not send a copy of the letter to the court or otherwise disclose to the court that the previously stated formulation of the case was being abandoned in favor of the objective reasonableness standard. There was no explanation for why King's counsel had waited fifteen months since the *Ortiz* decision to bring this argument to opposing counsel's attention, nor why the Plaintiff-Appellant considered *Ortiz* to be a statement of new law, since our court had stated, as early as 2006, that the Fourth Amendment governs challenges to conditions of con-

finement by a pretrial detainee awaiting a probable cause hearing. *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006) ("[T]he Fourth Amendment should have been applied to [plaintiff's] claim relating to the treatment and conditions he endured during his … warrantless detention. … [T]he *Gerstein* [*v. Pugh*, 420 U.S. 103, 114 (1975)] probable cause hearing is the event that terminates the Fourth Amendment's applicability following a warrantless arrest."). *See Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007) (stating that *Lopez* recognized that the Fourteenth Amendment's due process protections only apply to a pretrial detainee's confinement conditions after he has received a judicial determination of probable cause, and that claims regarding confinement conditions for pretrial detainees awaiting a probable cause determination are governed by the Fourth Amendment and the objectively unreasonable standard).

On December 14, Defendant-Appellee Kramer filed a motion in limine to preclude King from amending the complaint or arguing the applicability of the Fourth Amendment objective reasonableness standard. Kramer argued that King was attempting to "add an entirely new claim with an entirely different legal standard four weeks prior to the start of trial." She asserted that the law had been clear three years before Plaintiff-Appellant filed the case, and that the new standard would unfairly prejudice Kramer, whose experts had all reviewed the case under the deliberate indifference standard. She argued that she would need "a substantial amount of time" for her experts to address the new claim and in order to re-depose King's experts. Plaintiff-Appellant's response focused on the fact that objective reasonableness was the correct standard. King's brief also cited

law from our circuit stating that complaints need not identify legal theories.

The parties conferred with the district judge to discuss the motion in limine, and other matters preparatory to the upcoming trial. There is no record of the meeting, and at oral argument before our court the parties recollected several details differently, including whether either party requested to continue the trial so the parties could grapple with the correct constitutional standard, and whether the judge was amenable to continuance. In any case, there was no paper filed by either party after this meeting requesting a continuance, or objecting to the trial proceeding on the scheduled date, January 14, 2013.

In its written opinion granting the motion in limine, the district court noted that the parties had proceeded on the deliberate indifference theory at summary judgment and on appeal to our court, and determined that this conduct constituted waiver. See Order at 6 (W.D. Wis. Jan. 9, 2013), ECF No. 643 ("[P]laintiff waived any right to a Fourth Amendment claim premised on an objectively unreasonable standard by failing to timely pursue such a claim."). The district court therefore allowed only a limited amendment: Plaintiff-Appellant was allowed to proceed with her claim against Kramer under the Fourth Amendment, but was required to prove deliberate indifference under the more exacting Eighth and Fourteenth Amendment standards. In essence, the order required Plaintiff-Appellant to try her case against Kramer under the deliberate indifference standard, and this requirement was reflected in the liability instructions, which asked the jury to evaluate whether Kramer was "deliberately indifferent to King's serious medical need." As to La Crosse

County, the liability instructions stated that "[t]he County cannot be held liable for the unconstitutional acts of its or HPL's employees unless those acts are part of an official policy. To find La Crosse County liable, you must find that injury to John King was proximately caused by an official policy of denying access to prescribed medication without appropriate oversight by a physician."

After the jury returned a verdict finding Kramer was not deliberately indifferent and that La Crosse County had no official custom or policy of denying inmates access to prescribed medication, King filed a timely appeal.

In the main, this appeal presents the question of whether the district court erred in denying Plaintiff-Appellant's requested Fourth Amendment jury instructions with regard to Kramer. We address that portion of the appeal first.

## II

In granting Kramer's motion in limine to preclude Plaintiff-Appellant from arguing the applicability of the Fourth Amendment, the district court stated that Plaintiff-Appellant had waived her Fourth Amendment claim. Slip Op. at 6 (W.D. Wis. Jan. 9, 2013), ECF No. 643 ("[P]laintiff waived any right to a Fourth Amendment claim premised on an objectively unreasonable standard by failing to timely pursue such a claim. The court will not allow such a significant shift in plaintiff's theory of recovery on the eve of trial after such a delay."). The court repeated its finding of waiver in addressing Plaintiff-Appellant's post-verdict motion to amend the jury's verdict, stating that "[a]s in *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007), plaintiff waived any right to a Fourth Amendment claim premised on an objectively rea-

sonable standard by failing to pursue such a claim on a timely basis." Slip Op. at 5 (W.D. Wis. May 30, 2013), ECF No. 705.

What the court meant by waiver is difficult to define sharply, in part because "waiver is a flexible concept with no definite and rigid meaning" that is "generally defined as an intentional relinquishment of a known right," but which is often construed as "an equitable principle used by courts to avoid harsh results when a party has conducted itself in such a way as to make those results unfair." *Shearson Hayden Stone, Inc. v. Leach*, 583 F.2d 367, 370 (7th Cir. 1978). Neither the district court nor the Kramer states that Plaintiff-Appellant *intentionally* relinquished her Fourth Amendment claim, nor are we dealing with a hard, judicially recognized bright line for waiver, like the principle that a party waives on appeal any argument that it does not present to the district court. This bright-line principle backs the numerous waiver cases cited by Defendant-Appellee Kramer in her brief. *See, e.g.*, *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 546 (7th Cir. 1994) (holding that "[t]he failure to draw the district court's attention to an applicable legal theory waives pursuit of that theory in this court"); *Colburn v. Trs. of Ind. Univ.*, 973 F.2d 581, 588 (7th Cir. 1992) ("In general, we will not consider an argument which is presented for the first time on appeal."); *Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1225 (7th Cir. 1991) (holding that an issue not "properly preserved below" in the district court is generally waived); *Oates v. Discovery Zone*, 116 F.3d 1161, 1168 (7th Cir. 1997) (holding that a claim is not properly before the appellate court because "it is axiomatic that arguments not raised below are waived on appeal") (citation omitted). Likewise, *Williams* concerned a plaintiff who failed to raise the proper constitutional stand-

ard during the summary judgment briefing or in appellate briefing. 509 F.3d at 403 ("Williams has waived any Fourth Amendment claim by failing to amend or supplement his motion for summary judgment or raise the issue on appeal.").

The posture here is unusual, and different from the above-cited cases. While the district court ruled against Plaintiff-Appellant in granting summary judgment, we reversed that decision and remanded for further proceedings before the district court, re-opening the opportunity for the Plaintiff-Appellant to present and preserve arguments for appellate review. Plaintiff-Appellant's ability to do so was limited by the discretion of the district court—and the heart of this matter concerns whether the district court's discretionary call in excluding the Fourth Amendment standard in this case was correct. In reviewing the district court in a "matter of equitable judgment and discretion," we review for abuse of discretion. *See Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1026 (2014). "The district court's decision must strike this court as fundamentally wrong for an abuse of discretion to occur." *Salata v. Weyerhauser Co.*, No. 13-3136, --- F.3d ---, 2014 WL 3045772, at *2 (7th Cir. Jul. 7, 2014).

Here, we review the district court's discretion in balancing several competing concerns. The district court was rightly concerned with case management. Our law on pretrial case management underscores the principle that a district court has the discretion to narrow and focus the operative legal issues as the trial date closes in. *Cf. Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 n.6 (2008) ("[L]itigation is a winnowing process, and the procedures for preserving or waiv-

ing issues are part of the machinery by which courts narrow what remains to be decided.") (citation and internal quotation marks omitted). But the district court was also required to consider our strong commitment to the idea that a plaintiff need not plead legal theories in her complaint. *See, e.g.,* *Rabe v. United Air Lines, Inc.,* 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error."); *Ryan v. Ill. Dep't of Children & Family Servs.,* 185 F.3d 751, 764 (7th Cir. 1999) ("We have consistently held that plaintiffs are not required to plead legal theories. While a plaintiff may plead facts that show she has no claim, she cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all.") (citations omitted). In light of our liberal pleading principles, it appears that no amendment to the complaint would have been necessary for Plaintiff-Appellant to allege a Fourth Amendment claim: Plaintiff-Appellant, from the first, pled the fact that John King was a pretrial detainee awaiting his probable cause hearing. See Complaint at ¶ 412 (W.D. Wis. Mar. 3, 2010), ECF No. 1 ("Between April 7, 2007 and April 18, 2007, John King was being held as a pretrial detainee in the La Crosse Jail while awaiting a probable cause hearing."). So Kramer's motion in limine, at least the part that sought to prevent Plaintiff-Appellant from amending her complaint, was an awkward fit: no such amendment was necessary in order for King to argue a Fourth Amendment theory, because the facts required for that claim were in the complaint all along.

However, it is unquestionably true that the Plaintiff-Appellant allowed, and perhaps encouraged, the parties to construe her complaint as invoking a deliberate indifference claim. Regardless of whether the amendment to the plead-

ings was necessary, it was not inappropriate for the district court to recognize that Plaintiff-Appellant's introduction of the Fourth Amendment standard entailed a jump-shift. But even construing the Plaintiff-Appellant's move as a major change in her legal theory, the district court was faced with our law that permits flexibility for a plaintiff to adjust her legal theory over the course of litigation. *See, e.g.*, Fed. R. Civ. P. 15(a)(2) (stating that a court "should freely give leave" for a party to amend its pleadings "when justice so requires"); Fed. R. Civ. P. 15(b)(1) (stating that "[t]he court should freely permit an amendment" to the pleadings, based on a trial objection that "evidence is not within the issues raised in the pleadings … when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits"); *United States v. Sec. Pac. Bus. Credit, Inc.*, 956 F.2d 703, 707–08 (7th Cir. 1992) ("[A]mendments to complaints are liberally allowed under the Federal Rules of Civil Procedure up to and even after trial, judgment, and appeal, in cases in which there is no harm to the defendant from the tardy amendment."). Underscoring the importance of this flexibility, the district court is not unfettered in its discretion to refuse such changes. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."). So in examining whether the district court abused its discretion in granting Kramer's motion in limine, we review the court's balancing of the equities to each of the parties—whether a sufficient "justifying reason" was stated

for the bar of Plaintiff-Appellant's Fourth Amendment claim, despite our liberal pleading and amendment practices.

When a district court makes discretionary decisions of this nature, we do not always require the court to explicitly balance the equities as to each of the parties. For example, we have before noted that where allowing a significant late amendment causes "apparent" delay and prejudice, a district court does not err in not stating that reasoning outright. *See Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773–74 (7th Cir. 1995) (holding that though the court did not expressly state its reason for denying leave to amend, it was "apparent" what delay and prejudice would be caused by plaintiffs' motion, which sought to add four new individual defendants, as well as additional counts under two federal statutes and a state-law claim). But here, the district court resolved a close question: whether the Plaintiff-Appellant could argue the (undisputedly) correct legal standard to the jury, when it appeared that the shift would be a matter of law and jury instruction rather than a re-opening of discovery, and when the relevant facts underpinning the correct legal standard were already in the record. It was therefore essential in this case that the court give a specific account of its decision-making, and to clearly set forth its account of what harm would result from the shift in the legal standard. This it failed to do.

A district court that gives "insufficient reasons" for its equitable decision abuses its discretion. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792–93 (7th Cir. 2004) (holding that a district court abuses its discretion in denying a motion to amend when "the [opposing party's] case for

prejudice is stated … only in the most conclusory of terms," and no "particular witnesses or documents are identified" to support the argument that a delay would prejudice a party). Equities that may be considered include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182. But where Kramer would "not [be] prejudiced in any legally relevant sense by the court's amendment," and "[t]he equities … weigh heavily in favor of the [movant]," a court should exercise its discretion to allow an amendment. *Matter of Delagrange*, 820 F.2d 229, 233 (7th Cir. 1987).

We do not deny that the delay in asserting the correct standard was substantial: it is well-documented that that Plaintiff-Appellant single-mindedly pursued only the more rigorous standard of deliberate indifference until her letter six weeks before trial.[1] No good reason was given to the dis-

---

[1] The Plaintiff-Appellant entered numerous filings premised upon the incorrect deliberate indifference standard. *See* Complaint at 1, King v. Kramer, No. 10 CV 123 (Mar. 10, 2010), ECF No. 1; Joint Preliminary Pre-Trial Report and Discovery Plan at 1, 2 (Jun. 7, 2010), ECF No. 18; King's amended complaint, First Amended Complaint at 1, 3, 4, 7, 16, 17 (Jul. 30, 2010), ECF No. 21; Plaintiff's Brief in Opposition to Olson, Koby-Gobel, and La Crosse County's Motion for Summary Judgment at 22–27 (Feb. 4, 2011), ECF No. 71; Plaintiff's Brief in Opposition to Kramer and Mondry-Anderson's Motion for Summary Judgment at 1, 3, 12 (Feb. 4, 2011), ECF No. 73; Brief in Support of Motions in Limine of Plaintiff to Exclude Certain Testimony and Admit Other Testimony at 1–2, 4 (May 2, 2011), ECF No. 142; Plaintiff's Proposed Jury Instructions—Liability at 2, 4, 5, 7, 9, 13, 15, 16, 18 (May 13, 2011), ECF No. 206; Plaintiff's Proposed Special Verdict on Liability at 2–3 (May 13, 2011), ECF No. 209; Brief of Plaintiff-

trict court, or indeed at oral argument before our court, for
why the Plaintiff-Appellant waited so long to bring our
court's Fourth Amendment jurisprudence to the fore.[2] But as
we have stated, delay in itself does not constitute a sufficient
basis for a district court's equitable decision. *See George v.
Kraft Foods Global, Inc.*, 641 F.3d 786, 789–91 (7th Cir. 2011)
("[D]elay alone is not a reason to deny a proposed amend-
ment, and that delay must be coupled with some other rea-
son, such as prejudice to the defendants."). There must be
more, especially in a situation like the one at hand, where
grave inequity may result from the district court's decision:
the trial of the case under a more demanding, incorrect legal
standard, when the correct legal standard is known to the
district court. *See* Slip Op. at 5 (W.D. Wis. Jan. 9, 2013), ECF
No. 643 ("The law is clear that the 'Fourth Amendment gov-
erns the period of confinement between … arrest without a
warrant and the preliminary hearing at which a determina-
tion of probable cause is made, while due process regulates
the period of confinement after the initial determination of
probable cause.'") (quoting *Lopez v. City of Chicago*, 464 F.3d
711, 719 (7th Cir. 2006)). It is an extraordinary sanction in-

---

Appellant at 2–4, 30–34, 39–40, King v. Kramer, 680 F.3d 1013 (7th Cir.
Aug. 5, 2011), ECF No. 8; Reply Brief of Plaintiff-Appellant at 2–3, 6–9,
20–21 (7th Cir. Sep. 20, 2011), ECF No. 19.

[2] On the other hand, as we note above, the Plaintiff-Appellant did re-
peatedly plead the fact that King was a pretrial detainee awaiting his
*Gerstein* hearing. We also note that it was not just Plaintiff's counsel who
failed to raise the applicable Fourth Amendment jurisprudence until six
weeks prior to trial; in their numerous challenges to Plaintiff's suit in the
pretrial stages, Kramer's counsel also failed to appreciate the significance
of King's status as a pre-trial detainee awaiting a probable cause hearing,
and to raise the correct governing law in our circuit.

deed to require that a case be tried under the incorrect legal standard, when all parties and the court are aware of the correct standard.

It does not fall on us today to define the set of improbable circumstances under which such a sanction may be merited. But our review of the record and Kramer's submissions leaves us with the firm conviction that the present case was not an instance where the shift to the correct standard would have been sufficiently "significant" or prejudicial to Kramer to merit such a sanction, and that it was "fundamentally wrong" of the district court to disallow this change. It appears to us that there would have been no great cost to amending the jury instructions (which had not yet been finalized), or instructing the experts and witnesses to cabin their testimony to their opinions on the objective, accepted standard of professional conduct—as we will see, the very testimony that the experts were permitted to make at trial under the law of our circuit. The district court's two opinions on this question—once in response to the motion in limine, once in response to Plaintiff's post-verdict motion—proffer no specific weighing of the equities to change our analysis. The court determined that the Fourth Amendment argument had been waived by the Plaintiff-Appellant's delay in raising the correct standard. While we can certainly appreciate why the district court considered delay as a factor in deciding whether a change in legal theory should be allowed, there is no reason why delay should have been the sole factor considered, or the weightiest. The district court expressed abstract concerns that the plaintiff's shift would "prejudice the opposing side" and "derail the case from its trial track." Slip Op. at 5 (W.D. Wis. May 30, 2013), ECF No. 705. However, by contrast to the clear disadvantage to the

Plaintiff-Appellant that would result from going to trial under the deliberate indifference standard, the district court never explained in concrete terms why a shift to the correct objective reasonableness standard would be prejudicial and disadvantageous to Kramer.

Kramer's submissions to us and to the district court are also vague in elaborating on the inequities of disallowing an amended theory. We do not find compelling her argument about the inequity that would result from allowing Kramer to be tried under the objective reasonableness theory after several defendants were dismissed in *King I* by prevailing on the deliberate indifference standard. Perhaps this would be a persuasive argument if the Plaintiff-Appellant had tried to revive her claims against the dismissed parties on the basis of her change in theory—but King did not, and does not, make any such attempt. Kramer also states that the shift in the legal standard would require her to expend a "substantial amount of additional time" so that her experts could address the new legal standard, and that Plaintiff-Appellant's experts would have to be re-deposed. But no detail was provided about what experts would need this deeper study and why, or which of the Plaintiff-Appellant's experts require additional deposition. The vagueness of Kramer's claim of prejudice is curious, given that expert discovery had concluded well before Plaintiff-Appellant's November 27 letter. Kramer could have explained specifically which of her experts would need additional preparation, and which of King's experts would need to be re-deposed, and on what grounds. These questions were clearly on the parties' minds, as the issue of whether particular experts and witnesses could testify on the standard of care was hotly disputed by

the parties even prior to the summary judgment decision,[3] and certainly in the lead-up to trial.[4]

---

[3] *See, e.g.*, Motion in Limine to bar plaintiff's expert, Robert Greifinger, from rendering opinions regarding deliberate indifference or that training of La Crosse County jail officers was deficient (May 3, 2011), ECF No. 157; Motion in Limine to strike Robert Griefinger's standard of care opinion that Kramer and Anderson were deliberately indifferent (May 3, 2011), ECF No. 162; Motion in Limine to preclude Robert Greifinger, MD from testifying that Kramer and Anderson were deliberately indifferent for failing to take and/or record King's vital signs after 10:00 a.m. on April 18, 2007 (May 3, 2011), ECF No. 164; Motion in Limine to preclude Robert Greifinger, MD from offering any opinion that the alleged denial of King's asthma medication and/or inhalers by Sue Kramer constituted deliberate indifference (May 3, 2011), ECF No. 165; Motion in Limine to preclude nursing students from offering standard of care opinions regarding Sue Kramer's actions on April 18, 2007 (May 3, 2011), ECF No. 175; Supplemental Motion in Limine to preclude Robert Stuart, MD from testifying that Sue Kramer and Karen Anderson were deliberately indifferent (May 4, 2011), ECF No. 181.

[4] *See* Motion in Limine to exclude opinion evidence of Jacqueline Moore on deliberate indifference (Dec. 14, 2012), ECF No. 404; Motion in Limine to preclude Dr. Greifinger from offering any opinion that Kramer was deliberately indifferent relative to failing to take or record vital signs after 10 AM (Dec. 14, 2012), ECF No. 440; Motion in Limine to preclude Dr. Greifinger from offering any opinion that alleged denial of asthma medication or inhalers constitutes deliberate indifference (Dec. 14, 2012), ECF No. 441; Motion in Limine to preclude standard of care opinions of nursing students and opinions as to additional assessments (Dec. 14, 2012), ECF No. 451; Motion in Limine to preclude Dr. Stuart from opining that Kramer was deliberately indifferent to King's serious medical need (Dec. 14, 2012), ECF No. 455; Motion in Limine to preclude testimony by Dr. Greifinger as to training of officers, deliberate indifference of the officers, violation of county policies and violation of state and federal standards (Dec. 14, 2012), ECF No. 485.

But we are ultimately unpersuaded that the change in the governing legal standard would have required the experts' testimony to change, or that the experts' preexisting preparation under the Eighth Amendment standard would have hobbled their testimony under a Fourth Amendment standard. As the district court concluded in an order determining an expert's permissible scope of testimony, experts could not testify as to the subjective element of what Kramer "*should have known*," but they could testify as to what "the jury could *infer* a nurse with Kramer's background and experience in correctional health care *would* have known,"—in other words, the objective element of whether her actions constituted a departure from established professional standards of conduct. Order at 7 (W.D. Wis. Dec. 11, 2012), ECF No. 384. Under the law of our circuit, they were limited to this testimony because "Rules 702 and 704 [of the Federal Rules of Evidence] prohibit experts from offering opinions about legal issues that will determine the outcome of a case." *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012) (internal quotation marks and citation omitted).

Furthermore, the experts' opinions regarding the objective element of the deliberate indifference inquiry would have been just as helpful in resolving the question of whether Kramer had been objectively reasonable in her conduct. "Examples of behavior that does (and does not) constitute deliberate indifference are relevant in assessing the scope of clearly established law and, therefore, are relevant in determining whether the defendants' actions were objectively reasonable." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001) (citation omitted). Plaintiff-Appellant's assertion that the experts' testimony under either standard would have been identical was borne out by the actual tes-

timony at the trial, in which none of the witnesses, including the nine experts, used the phrase "deliberate indifference"; the only individuals who uttered that phrase were the attorneys and the court.

A party's attempted jump-shift in legal theory on the brink of trial is certainly not a vested right. As we have stated, it is within a district court's discretion to deny such a change where significant prejudice or harm would accrue to the non-movant, and equities in favor of the movant do not compel the change. Here, the record provides no elaboration from the district court or Kramer of what actual, specific prejudice would have resulted to her in defending against the correct Fourth Amendment standard. And in scrutinizing the record, we are unable to find compelling equities that would have justified the district court's decision to go to trial under the incorrect standard. In the absence of such countervailing equities, we are not convinced by the district court's statement that going to trial under the deliberate indifference standard while "recogniz[ing] plaintiff's claim under the Fourth Amendment" was "the only way to allow plaintiff to proceed on her claim without unduly prejudicing defendants with a last-minute, significant shift in plaintiff's theory of recovery at trial." Order at 4 (W.D. Wis. May 30, 2013), ECF No. 705. Indeed, it is unclear what it means to allow a plaintiff to proceed with a Fourth Amendment claim, but only under an Eighth Amendment standard. The fact that more intermediate measures were available to the district court—such as granting a continuance to allow Kramer to retool her defense, or conditioning the grant to amend the legal theory on the Plaintiff-Appellant's payment of any additional discovery costs—bolsters our conclusion. *See Estes v. Ky. Utils. Co.*, 636 F.2d 1131, 1134 (6th Cir. 1980) ("This is not

to say, however, that disallowance of the amendment is the only course open to a district court faced with such a motion. The scope of the district court's discretion in this area is broad, and in a proper case conditions may be imposed on the party seeking the amendment; for example, costs of preparing for litigation could be imposed on the party who asserts a valid, but untimely, dispositive [legal theory].”); 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1486 (3d ed.) (“If the party opposing the amendment can be protected by the use of conditions from any possible prejudice that might result from the untimeliness of the amendment, there is no justifiable reason for not allowing it.”). Had the Plaintiff-Appellant refused these or comparable ameliorating measures, perhaps the district court would have been entitled to deny leave to amend the theory. *See Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002) (“A trial court may deny leave to amend when the amendment would cause the opposing party to bear additional discovery costs litigating a new issue and the moving party does not offer to reimburse the nonmoving party for its expenses.”).

Lastly, we note that we cannot find anything in the record to suggest that King or her counsel “acted willfully, deliberately, [or] in bad faith” in waiting until late in the litigation to request an amendment of their legal theory. *Cf. Salata*, 2014 WL 3045772, at *3. The district court did not make any such finding, nor did it conclude that the delay was for a strategic advantage. Indeed, it is difficult to see why this shift would have been withheld until the eleventh hour as a strategic move to throw the litigation into disarray: the Fourth Amendment standard was a more favorable standard for the Plaintiff-Appellant, and she stood to benefit from

presenting the correct legal theory earlier in the litigation. At worst, King's attorneys may have been negligent in failing to identify the correct legal theory sooner, but they are not guilty of gamesmanship or a last-minute ambush. A district court that detects chicanery of this nature may be justified in denying a change in legal theory—but that was not the case here.

For these reasons, we find that the district court abused its discretion in ordering that the case against Kramer be tried under the incorrect Eighth Amendment standard. We therefore reverse the judgment as to her, and direct that the motion for a new trial be granted.

## III

We now turn to the judgment in favor of La Crosse County. As we noted in *King I*, at the summary judgment stage there remained a "question of material fact whether the County was aware at the relevant time that [Health Professionals Ltd., a private company that contracts with the County to provide medical services to inmates] had policies that violated inmates' constitutional rights." *King I*, 680 F.3d at 1021. We were concerned about the County's potential delegation of final decision-making authority to HPL, because of evidence that "HPL routinely switched patients off prescribed medication without appropriate oversight by a physician." *Id.* Even if the County retained final decision-making authority, we noted that the County "was on notice that HPL's physician- and medication-related policies were causing problems at the jail," and that the County was still prohibited from "adopt[ing] a policy of inaction" in responding to these potential violations of constitutional rights. *Id.* (citation and internal quotation marks omitted). As

part of this analysis, we noted that "[t]he evidence presented for summary judgment purposes shows that the County's policy was to entrust final decision-making authority to HPL over inmates' access to physicians and medications." *Id.* at 1020. However, we also observed that "[t]he County cannot be held liable for the unconstitutional acts of its employees unless those acts were part of an official custom or policy." *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "It is not enough to assert that the municipality is responsible under a theory of *respondeat superior*." *Id.*

In pretrial proceedings on remand, the district court denied King's motion in limine to take judicial notice of the contract between HPL and La Crosse County and instruct the jury that the County had delegated final decision-making authority to HPL. The district court also excluded the contract's indemnification provision. After the four-day trial, the jury returned a special verdict that the County did not have an official policy of denying access to prescribe medication without appropriate oversight by a physician.

In her briefs in this appeal, as well as in her answer to the County's petition for rehearing, Plaintiff-Appellant raises three separate arguments for why the judgment in favor of the County should be reversed. First, she argues that the shift in the applicable constitutional standard from one of deliberate indifference to objective reasonableness changes the constitutional standard by which La Crosse County's employees should be evaluated in determining the County's liability to King. That is true. However, as asserted in La Crosse County's original brief in this appeal and clarified in its petition for rehearing, the constitutional standard is only relevant if there existed a custom or policy that caused John

King to be deprived of a federal right. The jury was asked to evaluate whether there existed a custom or policy, and found that there was no policy of deprivation. That finding is not disturbed by the change of constitutional standard governing the claim against Kramer.

In the alternative, King raises two separate evidentiary arguments: she argues the district court erred in not taking judicial notice of the HPL contract, and in excluding the indemnification clause in the contract. We consider King's two evidentiary arguments for an abuse of discretion. Because we do not find that the evidentiary rulings were in error, the verdict in favor of the County stands.

**A**

Municipalities can be sued directly under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." *Monell*, 436 U.S. at 690. To succeed in recovering against the County, King was required to show that John King "(1) [] suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of his injury." *Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002). The existence of a policy or custom can be established in a number of ways: the plaintiff may point to an express municipal policy responsible for the alleged constitutional injury, or demonstrate that there is a practice that is so widespread that it rises to the level of a custom that can fairly be attributed to the municipality. *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir.

2007). The plaintiff may also assert that the individual who committed the constitutional deprivation was an official with policy-making authority. *Id.* Without establishing that a custom or policy of the County was a cause of John King's injury, Plaintiff-Appellant cannot succeed in her claim of *Monell* liability against the County. *Ienco*, 286 F.3d at 1001; *see also Sutterfield v. City of Milwaukee*, 751 F.3d 542, 549 (7th Cir. 2014) (holding that a plaintiff must "identif[y]" a "municipal policy, custom, or practice … to support a claim against" a municipality under *Monell*). And, obviously, the question of whether there existed a policy or custom is distinct from the question of whether the plaintiff presents a cognizable constitutional injury.

In essence, this is why King's action against La Crosse County cannot be revived by our recognition that the incorrect constitutional standard was used to try King's claim against Kramer. King does not assert a specific error committed by the jury in finding that the County had no official custom or policy in place to deprive inmates of their prescribed medications. Furthermore, the jury's finding that there was no official custom or policy is not disturbed by our conclusion that Kramer was evaluated under the wrong constitutional standard. Having successfully established that there was no official custom or policy in place, La Crosse County cannot be held liable under *Monell*.

**B**

We turn our attention to the two evidentiary arguments raised by King. First, King argues that the district court should have taken judicial notice of the contract between La Crosse County and HPL to conclude as a matter of law that the County had delegated final decision-making authority

over inmate health decisions to HPL. This argument is extrapolated from our statement in *King I*, where we observed that "[t]he County's express policies as embodied in the contract show that the County delegated to HPL final authority to make decisions about inmates' medical care." *King*, 680 F.3d at 1021. But we explicitly noted that our conclusion regarding HPL's decision-making authority reflected only our consideration of "[t]he evidence presented for summary judgment purposes." *Id.* at 1020. Additionally, our conclusion resulted from construing the evidence in the light most favorable to the Plaintiff-Appellant. *Id.* at 1020–21.

"We review the district court's refusal to take judicial notice of proffered materials for an abuse of discretion." *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 649 (7th Cir. 2011). Here, we easily conclude that the district court did not abuse its discretion in refusing to take judicial notice of the HPL contract. The district court correctly concluded that Plaintiff-Appellant's legal argument was not the proper kind of fact that may be judicially noticed under Federal Rule of Evidence 201(b). *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (holding that "[i]n order for a fact to be judicially noticed, indisputability is a prerequisite") (citation and quotation marks omitted). HPL's final authority, or lack thereof, was a disputed point and was not suitable for judicial notice. The district court had the requisite purchase to determine this disputed matter, in light of the complete view of the evidence, and it certainly had the authority not to take judicial notice of the contract. The district court did not abuse its discretion with regard to this request for judicial notice.

Plaintiff-Appellant also urges us to reverse on the basis of the district court's decision to exclude the indemnification agreement between the County and HPL. King argues that the indemnification agreement was admissible as evidence that the County delegated final decision-making authority to HPL. Under Federal Rule of Evidence 411, when the "paramount question before the jury [i]s one of negligence, evidence of [liability] insurance" is not admissible "absent a showing on the part of [the Plaintiff-Appellant] that [she] intended to use the information for some alternate purpose set forth in the second sentence of Rule 411," such as "proof of agency, ownership, or control, or bias or prejudice of a witness." *King v. Harrington*, 447 F.3d 531, 533 (7th Cir. 2006). Because Plaintiff-Appellant's main argument regarding the admissibility of the indemnification agreement goes to questions of liability, the district court did not abuse its discretion in excluding the agreement.

Because the district court did not err in making these evidentiary rulings, we find that King's request for a new trial with regard to its claim against La Crosse County is not justified. We therefore affirm the jury verdict in favor of the County.

## IV

For the foregoing reasons, we REVERSE the judgment of the district court as to Defendant-Appellee Kramer and REMAND that portion of the case for further proceedings consistent with this opinion. We AFFIRM the judgment as to Defendant-Appellee La Crosse County.