In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-1391

COURTNEY MCFIELDS,

*Plaintiff-Appellant*,

*v.*

THOMAS J. DART, Sheriff of Cook County, and COOK COUNTY,
ILLINOIS,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 7424 — **John Robert Blakey**, *Judge*.

———————————

ARGUED OCTOBER 27, 2020 — DECIDED DECEMBER 8, 2020

———————————

Before SYKES, *Chief Judge*, and KANNE and ST. EVE, *Circuit Judges*.

KANNE, *Circuit Judge*. Plaintiff Courtney McFields, once a detainee at Illinois's Cook County Jail, brought a putative class action against Cook County and its sheriff for allegedly depriving McFields and other detainees of adequate dental care. The district court denied class certification, and

McFields appealed. Because we conclude that the district court did not abuse its discretion, we affirm its decision.

## I. BACKGROUND

Defendants Cook County and its sheriff operate Cook County Jail and are charged with providing medical and dental care to pretrial detainees housed there. The district court construed the word "detainees" in the complaint to mean "pretrial detainees" because the Cook County Jail "houses primarily people who have not yet been convicted." The difference matters because the standard of proof is different for medical claims asserted by pretrial detainees and those brought by persons already convicted.

Under the jail's so-called "paper triage" policy, a detainee who has dental pain and wants treatment must submit a health service request form ("HSRF"), various versions of which existed between 2011 and 2018. Once submitted, staff review the HSRF and categorize it as "routine," "priority," or "urgent," and the detainee is then referred to a dentist for treatment in anywhere from three to thirty days (depending on the categorization).

Importantly, however, most detainees do not receive a face-to-face assessment from a nurse or higher-level practitioner before they ultimately receive care from a dentist. A face-to-face assessment would include an oral health screening, which could identify bona fide complaints of dental pain or reveal serious medical issues and would allow a nurse to dispense over-the-counter pain medication.

Courtney McFields complains about that last aspect of this policy—the failure to provide all detainees who complain of dental pain with face-to-face assessments. McFields was held

in the Cook County Jail from September 10 to December 18, 2014. He began experiencing dental pain while in custody, and on October 28, he submitted an HSRF complaining of a hole in his tooth and indicating a pain level of 7/10. A nurse reviewed the HSRF the next day, classified it as "routine," and referred it to dental staff without conducting a face-to-face assessment. McFields submitted at least one additional HSRF in mid-November, complaining of a pain level of 9/10. On November 20, McFields saw a dentist, who extracted the responsible tooth.

On October 13, 2017, McFields and other plaintiffs filed a putative class action against Defendants alleging that they suffered gratuitous pain as a result of the jail's paper triage policy. They alleged that the standard of care for processing a health service request requires a face-to-face assessment within 48 hours and that the jail's policy deviating from this standard is objectively unreasonable in violation of the Fourteenth Amendment.[1]

In April 2018, the district court denied Defendants' motion to dismiss the case as untimely. The district court held that the previous class action *Smentek v. Sheriff of Cook County*, No. 09-cv-529 (N.D. Ill.), tolled the two-year statute of limitations for the plaintiffs' claims. *McFields v. Sheriff of Cook Cnty.*, No. 17-CV-7424, 2018 WL 1784138, at *3 (N.D. Ill. Apr. 13, 2018).

---

[1] These plaintiffs were not the first to bring such a claim against Defendants. McFields himself would have been a class member in a similar case, but that court ultimately set a class closing date of October 31, 2013—which excluded McFields, whose claim arose in 2014. *Smentek v. Sheriff of Cook Cnty.*, No. 09-cv-529, 2016 WL 5939704, at *5 (N.D. Ill. Oct. 13, 2016). Hence the instant suit, which more or less picks up where *Smentek* left off. (The parties in *Smentek* ultimately settled the relevant class claims.)

Then, in November 2018, McFields and the other plaintiffs moved under Federal Rule of Civil Procedure 23(b)(3) to certify a class of "[a]ll persons who, while detained at the Cook County Jail between November 1, 2013 and April 30, 2018, submitted a written 'Health Service Request Form' complaining of dental pain and did not receive a face-to-face assessment by a registered nurse or higher-level practitioner after submitting the request."[2]

The district court denied the motion for class certification after concluding that the plaintiffs failed to satisfy the commonality, typicality, and predominance requirements of Rule 23. The court first considered the nature of the plaintiffs' claims and concluded that, to succeed, they would ultimately need to prove that the paper triage policy was "objectively unreasonable," which necessitates an individualized inquiry. With that in mind, the court then determined that commonality was not satisfied because the existence of a policy that failed to provide face-to-face assessments—the only common question presented—was "not dispositive of Plaintiffs' claims, or even particularly helpful in the required analysis." Moreover, typicality was not satisfied because "no case is typical"; each plaintiff "present[s] a different situation, involving different dental issues, different degrees of pain, different delays, different treatments." And finally, predominance was

---

[2] The proposed April 30, 2018, closing date derives from still other litigation, brought by the United States Department of Justice, surrounding the jail's provision of medical care. There, the county agreed in a consent decree to permit regular monitoring by the federal government, and on April 30, 2018, the monitor concluded that the issues were resolved. *United States v. Cook Cnty.*, No. 10 C 2946 (N.D. Ill. June 12, 2018), ECF No. 373 at 2.

not satisfied because "individual issues—the facts and circumstances of each individual detainee's claim—predominate" over common questions of law or fact.

Afterwards, the other plaintiffs accepted unconditional offers of judgment and did not reserve the right to appeal. McFields also accepted an offer of judgment but did reserve his right to appeal. He then filed the appeal we now address.

## II. ANALYSIS

We review the district court's denial of class certification for abuse of discretion. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (citing *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)). But if "the district court bases its discretionary decision on an erroneous view of the law or a clearly erroneous assessment of the evidence, then it has necessarily abused its discretion." *Id.* (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011)).

"To be certified as a class action, the putative class must first meet the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, typicality, commonality, and adequacy." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (citing *Messner*, 669 F.3d at 811). And when a plaintiff moves for certification under Rule 23(b)(3), as here, he must also show that "questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members." *Messner*, 669 F.3d at 811 (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)).

We focus on Rule 23(a)'s commonality and typicality requirements and Rule 23(b)(3)'s predominance requirement, as those were the grounds for the district court's decision.

*A. Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015) (quoting Fed. R. Civ. P. 23(a)(2)). But "[a]ny competently crafted class complaint literally raises common 'questions.'" *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 550 (7th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). "What matters to class certification," then, is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 350).

McFields argues that the questions common to the proposed class include (1) whether there was a widespread practice of failing to provide face-to-face assessments and, if so, (2) whether that policy exposed detainees to a substantial risk of harm in violation of the Constitution. Before deciding whether these proffered common questions are sufficient to satisfy Rule 23(a)(2), however, we must dispose of McFields's chief argument—that the district court, in analyzing commonality (and, indeed, the other Rule 23 requirements), improperly decided this case on the merits.

That argument is without merit. Determining whether common questions are likely to generate common answers apt to drive the resolution of the litigation "requires a precise understanding of the nature of the plaintiffs' claims." *Phillips*, 828 F.3d at 552. This analysis therefore "may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Id.* (quoting *Wal-Mart*, 564 U.S. at 351; *accord Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (Sometimes,

"the judge must make a preliminary inquiry into the merits.").

McFields contends that *Driver v. Marion County Sheriff*, 859 F.3d 489 (2017), shows the impropriety of looking to the merits at the class certification stage. But there, we reiterated the above principle: "[t]o certify a class, the trial court must satisfy itself 'after a rigorous analysis' that the Rule 23(a) prerequisites are established, and 'frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.'" *Id.* at 493 (alterations omitted) (quoting *Wal-Mart*, 564 U.S. at 350–51). We simply noted, in addition, the obvious principle that a defendant can't defeat class certification by "argu[ing] the merits of the claim … without referencing the Rule 23 factors or establishing how those factors are impacted." *Id.* That's clearly not what happened here. And McFields's reliance on *Bennett v. Dart*, 953 F.3d 467 (7th Cir. 2020), is misplaced for similar reasons. Nobody is arguing, and the district court did not hold, that "surety of prevailing on the merits" is a requirement for class certification. *Id.* at 469.

So it was appropriate for the district court to analyze commonality in light of the nature of McFields's claim. And our analysis does the same.

McFields's denial-of-care claim is governed by two main cases. The first is *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), which requires a plaintiff to show that he "(1) suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority … ; which (3) was the proximate cause of his injury." *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014)

(alterations omitted) (quoting *Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002)). The second is *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018), in which we held that a pretrial detainee bringing a claim for denial of medical care must show that the challenged policy is "objectively unreasonable." *Id.* at 351 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 392 (2015)). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively … whether the response was reasonable." *McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018).

With these cases in mind, we can quickly discard McFields's second proposed common question—whether the paper triage policy violates the Constitution. Answering this question in the affirmative requires McFields to prove that the policy was objectively unreasonable, *Miranda*, 900 F.3d at 351, but that is, by its nature, an inquiry not suitable for resolution as to all class members in one fell swoop, *McCann*, 909 F.3d at 886. Rather, it is an individualized inquiry that depends in large part on what is disclosed on each detainee's HSRF—when it was submitted, what type of grievance and what level of pain it reveals, and so forth. So the second common question proposed by McFields is not a "common" question at all.

That leaves only McFields's first proposed common question—whether there even *exists* a policy that does not give face-to-face assessments to all detainees who complain of dental pain. But the answer to that question—the mere existence of a policy—is relevant to just one small part of the analysis required under *Monell* and *Miranda*, and it leaves us far from resolving the litigation on a classwide basis.

We still must determine not only if that policy was objectively unreasonable as to each individual class member based on his or her specific circumstances, but also whether each detainee suffered a constitutional injury and whether each of those injuries was proximately caused by the unreasonable policy. *See King*, 763 F.3d at 649 ("[O]bviously, the question of whether there existed a policy or custom is distinct from the question of whether the plaintiff presents a cognizable constitutional injury.").

It matters immensely that each detainee "present[s] a different situation that involved a different type of dental pain, took place at a different time, [and] involved different medical professionals and prison staff," *Phillips*, 828 F.3d at 555; it is precisely these sorts of "[d]issimilarities within the proposed class" that "have the potential to impede the generation of common answers" apt to drive resolution of the litigation, *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) (quoting *Wal-Mart*, 564 U.S. at 350).

Some examples illustrate the point. Suppose a detainee submits an HSRF complaining of a toothache in the morning and is treated by a world-class dentist that afternoon. Or imagine that, for some reason, a perfectly healthy detainee falsely indicates extreme pain on his HSRF. Both would fall comfortably into McFields's proposed class so long as neither was given a face-to-face assessment before receiving dental treatment, but obviously, these would-be plaintiffs have suffered no injury and have no colorable constitutional claim. Thus, determining only that the policy exists leaves us miles from resolving the litigation on a classwide basis. Or, as the district court put it, a failure to provide a face-to-face

assessment "says nothing about whether the ultimate course of treatment violated the Constitution."

In short, "[t]he claims of every class member will [not] rise or fall on the resolution of" whether the paper triage policy existed, *Suchanek*, 764 F.3d at 757, and whether the policy was objectively unreasonable requires an individualized, plaintiff-specific assessment, *McCann*, 909 F.3d at 886. We therefore conclude that the district court did not abuse its discretion in finding that McFields fails to satisfy commonality.[3]

### B. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Generally, a class representative's "claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (alterations omitted) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Although 'the typicality requirement may be satisfied even if there are factual

---

[3] McFields also argues at length that Defendants are improperly re-characterizing his complaint as challenging a *delay* in treatment rather than what it is: a challenge to the specific practice of not providing face-to-face assessments, period. Not much recharacterizing is needed to construe McFields's complaint as one for untimely care; it does refer to, for example, "the prompt treatment of dental pain"; the failure to conduct face-to-face assessments "within 48 hours"; and Defendants' "refusal to ensure timely screening." In any event, McFields does not cite any case holding that the failure to provide face-to-face assessments is *per se* objectively unreasonable regardless of "the totality of facts and circumstances faced by [each] individual." *McCann*, 909 F.3d at 886.

distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). A class has been certified, for example, where "evidence was presented to show that *all* plaintiffs had 'experienced dental pain and significant delays in treatment, if they were treated at all.'" *Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 893 (7th Cir. 2012) (alterations omitted) (quoting *Smentek v. Sheriff of Cook Cnty.*, No. 09 C 529, 2010 WL 4791509, at *1 (N.D. Ill. Nov. 18, 2010)).

We agree with the district court that McFields has not "affirmatively demonstrate[d] his compliance with the" typicality requirement. *Wal-Mart*, 564 U.S. at 350. Though a separate inquiry from the commonality question, our conclusion here flows from the same basic defects described above. *See Priddy v. Health Care Servs. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) ("Commonality and typicality 'tend to merge.'" (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982))). Each class member—McFields included—presents fundamentally unique circumstances. And these differing situations are not the mere "factual distinctions" that arise in most any case; these are *overwhelming* factual distinctions that defeat any "essential characteristics" across the claims. *Muro*, 580 F.3d at 492 (quoting *De La Fuente*, 713 F.2d at 232).

McFields asserts that his claim is based on the same "course of conduct" that affected all members of the class. But that does not mean that his claim has "the same essential characteristics as the claims of the class at large," which is what

"the requirement is meant to ensure." *Id.* (quoting *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993)). In fact, the district court found that "it was not the failure to provide the [face-to-face] assessment that allegedly delayed McFields' treatment," but "the delay in the execution of the [nurse's] referral" of his HSRF to a dentist. "Had the nurse's referral … been acted upon with expediency, McFields could hardly be heard to complain about the lack of a face-to-face assessment." These facts set McFields's claim apart from those of the other putative class members. We therefore see no abuse of discretion in the district court's conclusion that evaluating the plaintiffs' claims "requires a 'highly individualized inquiry'; each Plaintiff's case is different and, therefore, no case is typical." *See Wrightsell v. Sheriff of Cook Cnty.*, No. 08 CV 5451, 2009 WL 482370, at *2 (N.D. Ill. Feb. 19, 2009).

### C. Predominance

Finally, Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

The district court concluded that McFields failed to satisfy the predominance requirement because "individual issues—the facts and circumstances of each individual detainee's claim—predominate." We see no real need to analyze this issue given our conclusions that McFields failed to satisfy the requirements of Rule 23(a)(2) and (3). After all, Rule 23(b)(3)

is "far more demanding" than the commonality requirement that he already failed to meet. *Id.* at 624.

At any rate, predominance is doomed here. Satisfying predominance "requires more than a tally of common questions; the district court must consider their relative importance." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018) (citing *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014)); *see Amchem Prods.*, 521 U.S. at 624 (finding predominance not satisfied "[g]iven the greater number of questions peculiar to the [individual] class members … and the significance of those uncommon questions"). Considering our analysis above, we agree with the district court's finding that individual issues predominate over common questions—the opposite of what Rule 23(b)(3) requires.

We have no need to address Defendants' alternative argument that McFields is an inadequate class representative because his claim is untimely.

### III. CONCLUSION

For the above reasons, we conclude that the district court did not abuse its discretion in denying class certification. We therefore AFFIRM the district court.