In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-4127

SUSAN PRIDDY, *et al.*, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees*,

*v.*

HEALTH CARE SERVICE CORPORATION,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:14-cv-03360 — **Richard Mills**, *Judge*.

ARGUED APRIL 21, 2017 — DECIDED AUGUST 31, 2017

Before WOOD, *Chief Judge*, SYKES, *Circuit Judge*, and COLEMAN, *District Judge*.[*]

WOOD, *Chief Judge*. Health Care Service Corporation (HCSC) is one of the nation's largest health insurance providers. This appeal presents the question whether the district

---

[*]Of the Northern District of Illinois, sitting by designation.

court erred by certifying a class action against HCSC. The named representatives assert that HCSC is violating federal and Illinois law by the way in which it is using third-party affiliates to provide various services. We conclude that the record fails to support class certification, and so we vacate the certification and remand for further proceedings.

**I**

HCSC is an Illinois not-for-profit corporation that offers Blue Cross and Blue Shield insurance through licensed affiliates in five states: Illinois, Montana, New Mexico, Oklahoma, and Texas. To help provide that coverage, HCSC contracts with outside affiliates for prescription drug services, claim payments, and other administrative work. These relationships are often not at arm's length—HCSC owns or controls its affiliates, and places its officers on their boards. HCSC does not disclose the extent of these ties to its insureds. Its policy terms state that the affiliates pay it rebates, but it does not share those rebates with its customers.

Alleging that these arrangements violated Illinois law and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.*, Susan Priddy and ten other named plaintiffs filed the present case as a putative class action against HCSC in November 2014. (Some of them have since been eliminated from the case, but their departure does not affect our analysis.) Their theory is that HCSC's affiliates overcharge beneficiaries and then return the proceeds to HCSC via rebates. Customers are unaware that these hidden financial transactions are taking place because HCSC hides its control of the affiliates. This self-dealing, the plaintiffs believe, violates HCSC's fiduciary duties to beneficiaries under ERISA and Illinois law.

Before much else happened in the district court, the question of class certification arose. See FED. R. CIV. P. 23(c)(1)(A) ("At an early practicable time after a person sues … the court must determine by order whether to certify the action as a class action."). Plaintiffs moved for certification, and the district court granted their request. It certified four classes under Federal Rule of Civil Procedure 23(b)(3): (1) employers who purchased HCSC plans for employees in any of the five states served by HCSC; (2) beneficiaries of employer-furnished plans provided by HCSC in any of the five states; (3) individuals who purchased insurance directly from HCSC in any of the five states; and (4) Illinois insureds who were protected by Illinois insurance regulations. The court also spelled out some exclusions not relevant here. Altogether, the four classes included approximately ten million people. The court named Susan Priddy and Michael Beiler as the class representatives, and it designated counsel for the named plaintiffs as class counsel.

The certification decision was concise. Turning first to the four requirements of Rule 23(a), the court found that numerosity was obvious, given the putative class's size. So was commonality: the theory in every case was that HCSC had overcharged its beneficiaries, and "the contract language and the treatment of the putative class members in both classes rests on a uniform corporate policy." Typicality was present, the court thought, because every class member's claim rested on the same legal theory. And it held that the lead plaintiffs provided adequate representation since Priddy's insurance was employer-sponsored, whereas Beiler had bought his individually. (It did not explain why either Priddy or Beiler could represent the employer class; Priddy is from Illinois, which

might have explained why she could stand for the group of Illinois insureds.)

Turning to Rule 23(b), the district court recognized that it was looking at a "common question," Rule 23(b)(3) class action. That required it to find that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action is a superior way of handling the litigation. The court made short work of both inquiries. A class action was a superior way of proceeding, it thought, both because of the class size and the slim likelihood that the members would pursue relief on their own. It concluded that the insurance policies governing each class member's relationship to HCSC were uniform, and thus that the common question of the legality of those terms predominated. HCSC disagreed vociferously with all this, pointing out many ways in which the proposed classes were heterogeneous and thus not suited to common treatment. HCSC filed this appeal pursuant to Federal Rule of Civil Procedure 23(f), and a panel of this court agreed to accept it.

## II

As the district court recognized, there are two steps in certifying a class under Rule 23. First, the party seeking certification must show numerosity, commonality, typicality, and adequacy, though commonality and typicality "tend to merge." *General Telephone Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Rule 23(a) lays out the details of each requirement:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

The second step requires the party to satisfy "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Because this suit seeks money damages on behalf of the class, based on common questions, it may proceed only under Rule 23(b)(3), which requires both that common questions predominate and that the class form is superior to other ways of adjudicating the case.

These are not inquiries that the court is free to make in a fact-free zone. Unlike a motion under Federal Rule of Civil Procedure 12(b)(6), a motion to certify a class under Rule 23(c) is not one for which the court may "simply assume the truth of the matters as asserted by the plaintiff." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Instead, "[i]f there are material factual disputes, the court must receive evidence … and resolve the disputes before deciding whether to certify the class." *Id.* (internal quotation marks omitted). Sometimes it is necessary to conduct a preliminary inquiry into the merits, when the merits overlap with the considerations under Rule 23(b)(3). *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

The plaintiff bears the burden of proving by a preponderance of the evidence all necessary prerequisites to the class action. This normally means that some discovery related to the class certification issue must take place. Ever

since the Supreme Court underscored this point in *Wal-Mart* and related cases, as a practical matter the time when a potential class action is ripe for a certification decision has been pushed back, and the burden on the party seeking to proceed with a class has increased. But this is an inevitable and understandable consequence of the transformation of a lawsuit that occurs when a class is certified: it suddenly morphs from a simple A versus B dispute, often with very low monetary stakes, to a gargantuan matter involving thousands, if not millions, of people, and vastly expanded potential liability.

We generally review certification decisions deferentially and reverse only when the lower court went beyond the bounds of its discretion. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). We examine questions of law *de novo*, and we also assess *de novo* whether the court followed the correct procedures when making its certification decision. See *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 (7th Cir. 2013).

HCSC challenges the certification decision on nearly every front, but it devotes special attention to its claim that the district court failed adequately to grapple with Rule 23(a)'s commonality and typicality requirements. The plaintiffs urge that they have presented common questions, typical to the whole group, because everything turns on the fiduciary duty HCSC owes to its insureds. That argument is sound only insofar as the plaintiffs are challenging something actually covered by a fiduciary duty.

Determining whether a fiduciary duty was violated is a context-specific endeavor, because a plan administrator is "a fiduciary only to the extent that he acts in such a capacity in

relation to a plan." *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (internal quotation marks omitted). ERISA recognizes that a party might be acting in a fiduciary capacity at some points and in an ordinary capacity at other points. It allows a fiduciary to have "financial interests adverse to beneficiaries" provided the fiduciary "wear[s] the fiduciary hat when making fiduciary decisions." *Id.* at 225. The first question here is therefore not the ultimate one concerning the possibility that HCSC acted to its beneficiaries' detriment, but rather the preliminary one whether it did so while wearing a fiduciary hat. The answer depends on HCSC's relationship to the insured—a given decision may be fiduciary in nature for HCSC's directly insured customers, while not being so if the company's only connection to a class member is that it administered her benefits.

It is not even clear that HCSC owed many class members any fiduciary duty at all, and the district court did not undertake this inquiry. Three of the four classes it certified include people whom HCSC does not insure and who do not pay it premiums—it only administers their health benefits. Moreover, ERISA applies only to plans "established or maintained by an employer or by an employee organization, or by both … ." 29 U.S.C. § 1002(1); *accord* 29 C.F.R. § 2510.3-3(b). It is therefore unclear at best how class members who bought insurance *directly* from HCSC can plausibly claim relief under the statute. Again, the district court did not explore this angle. We are thus unable to divine whether and how these concerns affected its ultimate certification decision. Even seemingly glaring problems went unaddressed—we are uncertain, for instance, why the class expressly includes members who "ob-

tained health care coverage from … a benefit plan underwritten, administered, or otherwise provided by Defendant, HCSC, *but not subject to ERISA*." (emphasis added).

We offer no opinion on how these issues should be resolved on the merits; our point is that they should have been addressed before the district court certified any of the four classes it identified. Both facts and legal analysis supporting those proposed classes are missing at this stage. It is possible, we assume, that even if HCSC owed no fiduciary duty to the people whose benefits it merely administered, it may have worn the fiduciary hat for others. Providing an insured with medicine and deciding whether to cover her claims does not usually bring to mind a duty-free relationship. But the district court did not tell us how it approached these and other crucial points, or why they did or did not guide its certification decision. Even if each individual omission does not compel a finding of abuse of discretion, the court's certification order faces the analytic equivalent of death by a thousand cuts—cumulatively, the failure to provide a reasoned explanation on a string of important points compels reversal. Explanations are necessary; complex certification decisions cannot be made by judicial fiat.

The order granting class certification is REVERSED and the case is REMANDED for further proceedings. Circuit Rule 36 shall apply on remand.