In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 17-2164

VEXOL, S.A. DE C.V. and
SERGIO TORREBLANCA LOPEZ,

*Plaintiffs-Appellants*,

*v.*

BERRY PLASTICS CORPORATION,

*Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division
No. 3:15-cv-55-TWP-MPB — **Tanya Walton Pratt**, *Judge*.

_____

ARGUED JANUARY 8, 2018 — DECIDED FEBRUARY 12, 2018

_____

Before EASTERBROOK and SYKES, *Circuit Judges*, and
BUCKLO, *District Judge*.[*]

BUCKLO, *District Judge*. This appeal challenges the district
court's dismissal under Fed. R. Civ. P. 12(b)(6) of business
tort claims asserted under Mexican law. We affirm.

_____

[*] Of the Northern District of Illinois, sitting by designation.

Vexol is a Mexican company in the business of providing plastic and shrink wrap to end users in Mexico. Torreblanca is a Mexican citizen and, we presume from context, an officer of the company. Together (collectively, "Vexol") they filed suit in the Southern District of Indiana against Berry Plastics, a Delaware corporation that allegedly does business in Mexico through its subsidiary, Pliant de Mexico, S.A. de C.V. ("Pliant").[1]

Vexol alleges the following. Pliant manufactures and distributes a variety of plastic products, including shrink wrap it began selling to Vexol in large quantities pursuant to a series of purchase orders Pliant and Vexol executed in 2009. A business dispute arose after Vexol's customers began to complain about the quality of Pliant's shrink wrap and to return their purchases to Vexol. Vexol, in turn, sought to return the unsatisfactory product to Pliant. But instead of accepting the returns and issuing a refund in the form of a credit to Vexol's account, Pliant went on the offensive, claiming that Vexol owed it money pursuant to a fabricated *"pagare"*—that's the Mexican equivalent of a promissory note—and causing "a separate Mexican entity named Aspen Indus-

---

[1] Vexol's sketch of Berry's corporate structure is murky. The second amended complaint alleges that Berry owns all shares of a company called "Pliant Corp.," then goes on to state that Berry's subsidiaries include "Pliant Corporation" (which may or may not be the selfsame "Pliant Corp.") and "Pliant Film Products of Mexico, Inc." Vexol then asserts that Berry "does business in the Republic of Mexico through the subsidiary, Pliant de Mexico, S.A. de C.V." (this is the entity the complaint defines as "PLIANT"), but leaves ambiguous whether "PLIANT" is Berry's direct subsidiary or an indirect subsidiary held by another of Berry's subsidiaries. We needn't sort out these ambiguities, however, to conclude that the second amended complaint was appropriately dismissed.

trial S.A. de C.V." to enforce the *pagare* in the Mexican Mercantile Court. When those proceedings failed to produce either payment by Vexol or a judgment in Pliant's favor, Pliant took another tack: it filed a criminal complaint against Vexol for fraud, claiming that *Vexol* had unlawfully created and filed the false *pagare*. The criminal complaint has not been prosecuted; nevertheless, Pliant's lawyers routinely call Vexol and threaten to have Torreblanca arrested unless Vexol pays up. The goal of these threats and baseless proceedings, Vexol asserts, is to disparage Vexol and drive it out of the market so that Pliant can take its shrink wrap customers.

Vexol filed suit in the district court in April of 2015, claiming that the foregoing conduct violates Indiana tort law and Mexico's Federal Civil Code. Exercising diversity jurisdiction under 28 U.S.C. § 1332(a)(2), the court invoked Indiana choice-of-law principles and dismissed with prejudice the Indiana law claims in Vexol's first amended complaint. The court observed that all of the alleged wrongs took place in Mexico and held that because Indiana adheres to the traditional rule of *lex loci delicti*, which calls for application of the law of the place of the tort, any redress for injuries caused by those wrongs must be had under Mexican law.

The court went on to dismiss without prejudice the Mexican law claims, first because appellants failed to comply with Fed. R. Civ. P. 44.1, which requires federal litigants to give notice of their intent to rely on foreign law, and second because the first amended complaint failed to allege clearly what actions Berry—as opposed to third-parties such as Pliant and Aspen—had taken in violation of Mexican law. The court also dismissed Vexol's claims for "moral damages" and attorneys' fees based on Vexol's failure to plead the un-

derlying substantive violations. The court granted Vexol fourteen days to file a second amended complaint, warning that failure to cure these defects would result in dismissal with prejudice.

Vexol timely filed a second amended complaint (to which we'll now refer simply as "the complaint") concurrently with a Rule 44.1 motion for judicial notice. Like its predecessor, the complaint asserted two substantive claims, one for "illicit acts" in violation of Article 1910 of Mexico's Federal Civil Code, and another for fraud ("*dolus*") and willful misrepresentation, as well as claims for the remedies of "moral damages" and attorneys' fees. The "illicit acts" claim alleged that Berry aided and abetted Pliant in: 1) misleading Vexol into agreeing to purchase products from Pliant with the intention of stealing Vexol's customers; 2) falsely accusing Vexol of fraud; 3) threatening to have Torreblanca arrested; and 4) instigating false criminal charges and an order of arrest. The claim for *dolus* and willful misrepresentation alleged that defendant used "false statements and maneuvers" to induce Vexol to enter into the purchase orders with no intent to perform under them.

Vexol's accompanying Rule 44.1 motion—supported, as such motions frequently are, by expert testimony, commentary, and case law—sought a ruling determining relevant aspects of Mexican law. With respect to "illicit acts," Vexol argued that Mexican law does not recognize individual common law torts but has codified a single law of "wrongs," which includes Article 1910. Translated into English, Article 1910 states:

> Whoever, by acting illicitly or against the good customs and habits, causes damage to another

> shall be obligated to compensate him unless he can prove that the damage was caused as a result of the fault or inexcusable negligence of the victim.

*Curley v. AMR Corp.*, 153 F.3d 5, 14 (2nd Cir. 1998), *quoting* Código Civil Federal [CCF] [Federal Civil Code], art. 1910 (Abraham Eckstein and Enrique Zepeda Trujillo Trans. 1996). Vexol's discussion of Article 1910 focused on two of its features: first, that it does not distinguish between intentional and negligent wrongdoing, but instead draws a line between "subjective," i.e., fault-based liability and "objective," i.e., strict liability; and second, that liability is "somewhat open-ended" to the extent it proscribes conduct that violates "good customs." Vexol then identified the elements of an "illicit acts" claim as: 1) illicit behavior by the defendant; 2) damages and losses suffered by the plaintiff; and 3) that the illicit behavior was the "sole, direct, immediate and necessary cause" of the plaintiff's damages and losses.

To support its construction of its *dolus* claim, Vexol relied on an expert affidavit provided by Claus Von Wobeser in *Agroindustrias Colotepec, S.A. de C.V. v. M&M/Mars*, No. 2002-09539 (Tex. Dist. 2002), whose translation of Article 1815 of the Federal Civil Code states:

> *Dolus* in contracts is understood to mean any suggestion or artificiality used to induce a contracting party into error or to maintain him into error …

Von Wobeser Aff. at ¶ 21. Under this provision, Vexol argued, a plaintiff must prove: 1) that the defendant intentionally made "suggestions or other maneuvers" to induce the

plaintiff into error; 2) that plaintiff was actually induced into error; 3) that the error was material; and 4) that plaintiff suffered damages as a result.

Vexol's motion also asserted that Article 1934 of Mexico's Federal Civil Code establishes a two-year statute of limitations for all tort claims, which begins to run on the date the harm occurred.

Berry did not oppose Vexol's motion for judicial notice or dispute the elements of the claims Vexol raised under Mexican law. It moved to dismiss the complaint with prejudice, however, arguing that Vexol's action was untimely under Mexico's statute of limitations and that the complaint failed to cure the defects the court had previously identified.

The district court granted Vexol's motion for judicial notice and dismissed the complaint with prejudice. Although the court rejected Berry's statute of limitations defense, it concluded that even after amendment, the complaint failed to allege any misconduct by Berry. This timely appeal followed.

The parties limit their appeal to three issues. The first is whether the district court correctly concluded that Vexol failed to state a plausible claim against Berry under Mexican law. The second is whether the district court abused its discretion in denying Vexol's request to file a third amended complaint. The third, which Berry asserts in the body of its response brief, is whether Vexol should be sanctioned for filing a frivolous appeal.

Vexol has maintained throughout this litigation that it seeks to hold Berry *directly* liable for actions taken in Mexico. In the district court, Vexol expressly disavowed reliance on a

theory of corporate veil-piercing and insisted that Berry's liability flows from its "direct participation and intrusive control over the transactions in question." At oral argument, Vexol again disclaimed any theory of vicarious liability. Indeed, Vexol stated that "the cause of action arises from Berry's conduct in Mexico." But the complaint plainly does not describe anything that *Berry* did *in Mexico*.

As the district court correctly observed, the complaint offers detailed allegations of wrongdoing by others—primarily Pliant and its lawyers, and secondarily Aspen (whose relationship to Berry, if any, the complaint does not disclose) and its lawyers—but as to Berry provides only the barest and most generalized allegations of corporate control. The complaint names Berry's corporate officers and the corporate officers of another Berry subsidiary, Pliant, LLC, and alleges that Pliant's (that is, Pliant de Mexico's) board of directors comprises a subset of those individuals. But the complaint does not attribute any specific action to any of those individuals, much less does it allege any action they took in conjunction with the creation and enforcement of the phony *pagare*; the fraudulent inducement into purchasing agreements; the instigation of criminal proceedings; or the calls threatening Torreblanca's arrest. Nor does the complaint attribute any of the unspecified misrepresentations, false statements, or maneuvers underlying Vexol's *dolus* claim to any of these individuals.

These shortcomings doom Vexol's *dolus* claim, which sounds in fraud and thus is subject to the heightened pleading standards of Fed. R. Civ. P. 9(b). For well-nigh three decades, this court has made clear that plaintiffs alleging fraud must state particularly "the who, what, when, where, and

how" of the circumstances. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Vexol's complaint satisfies none of these requirements.

Rule 9(b) arguably applies to Vexol's "illicit acts" claim too, at least to the extent it is based on deception in conjunction with the purchase agreements. But the claim falls short even if viewed through the more liberal lens of Fed. R. Civ. P. 8. Vexol insists that "the cause of action arises from Berry's conduct in Mexico," yet its complaint fails to describe a single act Berry took *in Mexico*.[2]

Perhaps Vexol thinks it sufficient to describe Berry's illicit conduct generally as "aiding and abetting Pliant" in committing specific bad acts in Mexico. Setting aside that nothing in Vexol's Rule 44.1 motion addresses the availability or scope of aiding-and-abetting liability under Mexican law, even if we assume that such a theory is cognizable, federal pleading standards require Vexol to provide *some* factual basis to support it. However expansive Mexico's law of "wrongs" in terms of the degree of culpability required for liability and the breadth of conduct proscribed (the two dimensions of the law discussed in Vexol's Rule 44.1 motion), Vexol cites no authority to suggest that corporate ownership, without more, is sufficient to prove aiding-and-abetting liability under Article 1910. We decline to hold absent compel-

---

[2] Asked at oral argument to direct the court to any allegation describing actions Berry took in Mexico, Vexol's counsel pointed to a paragraph stating: "The attorney initiating the actions in Mexico was approved by BERRY and reports directly to BERRY's legal department in the United States." These allegations merely confirm that Berry acted, if at all, "in the United States."

ling argument or evidence that Mexican law would support such a claim.

The district court thus correctly dismissed Vexol's complaint. Moreover, it did not abuse its discretion in denying Vexol's request to amend its complaint further. As noted above, the district court had previously afforded Vexol the opportunity to cure specifically identified defects in the first amended complaint, and it warned Vexol that failure to do so would result in dismissal of its claims with prejudice. Vexol insists that the second amended complaint addressed "many" of the shortcomings the district court perceived, but nothing in its submissions suggests how it intends to resolve the remainder. It appears to us that another bite at the apple is unlikely to engender anything other than additional expense for all involved.

This leaves only Berry's request for sanctions, which we deny on the straightforward ground of Berry's noncompliance with Fed. R. App. P. 38. The Rule states:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

Berry did not submit a "separately filed motion" for sanctions. If the language of the Rule left any room to doubt whether one was required, the Committee Notes to its 1994 Amendments eliminated it: "A statement inserted in a party's brief that the party moves for sanctions is not sufficient notice. … Only a motion, the purpose of which is to request

sanctions, is sufficient." Fed. R. App. P. 38. We discern no basis for departing from the Rule here.

AFFIRMED