In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1010

ARCHIE BEATON,

*Plaintiff-Appellee,*

*v.*

SPEEDYPC SOFTWARE, a British Columbia Company,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 8389 — **Andrea R. Wood**, *Judge.*

ARGUED MAY 30, 2018 — DECIDED OCTOBER 31, 2018

Before WOOD, *Chief Judge*, and SYKES and HAMILTON,
*Circuit Judges*.

WOOD, *Chief Judge*. When Archie Beaton's laptop started
misbehaving, he looked for an at-home fix. An internet search
turned up a product from SpeedyPC Software ("Speedy")
that offered both a diagnosis and a cure. Beaton took ad-
vantage of Speedy's free trial, which warned that his device
was in bad shape and encouraged him to purchase its soft-

ware solution: SpeedyPC Pro. He did. But he was disappointed with the outcome: despite Speedy's promises, the software failed to improve his laptop's performance.

Beaton became convinced that he was the victim of a scam. He filed a consumer class action against Speedy, raising both contract and tort theories. The district court certified a nationwide class and an Illinois subclass of software purchasers. Hoping to dodge the consumer class action, Speedy turned to this court for relief. See FED. R. CIV. P. 23(f). Because we find no abuse of discretion in the district court's certification orders, we affirm.

**I**

The ad for SpeedyPC Pro that Beaton found in August 2012 promised that Speedy's software would fix common problems affecting computer speed and performance and unleash the device's "true potential." It also offered a free scan to detect any problems. Beaton decided to give it a try, and so he downloaded and ran the free trial. After assessing the laptop's health across five modules, the program told Beaton that his computer was in critical condition as a result of hundreds of serious errors.

The free trial prompted Beaton to buy the licensed version of the software, which (he was promised) would fix the identified problems. Beaton was sold. Using his personal business's credit card, he purchased SpeedyPC Pro and ran it on his laptop. It began by scanning his device, just as the free trial had done. The program then told Beaton to click on "Fix All." Beaton dutifully did so. Yet nothing happened. Beaton ran the software a few more times, to no avail.

Feeling ripped off, and suspecting that his experience was not unique, Beaton sued Speedy in 2013 on behalf of a class of consumers defined as "All individuals and entities in the United States who have purchased SpeedyPC Pro." Despite Speedy's lofty pledges, Beaton claimed, the software failed to perform as advertised. Instead, it indiscriminately and misleadingly warned *all* users that their devices were in critical condition, scared them into buying SpeedyPC Pro, and then ran a functionally worthless "fix." The district court had jurisdiction over this putative class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

Speedy twice tried, and twice failed, to get the lawsuit thrown out. The district court first rejected its effort to have the complaint dismissed for failure to state a claim on which relief could be granted. Speedy then tried a motion to dismiss on *forum non conveniens* grounds, based on the fact that the software's End User License Agreement ("the Agreement") contained a choice-of-law provision selecting the law of British Columbia (Canada) to govern any claims arising from it. The district court, however, decided to retain the case without definitively resolving the choice-of-law issue at that juncture.

Four years after the suit was filed, Beaton moved to certify a class and subclass of software purchasers. Beaton's proposed class definition was narrower than the one in his complaint. It included "[a]ll individuals living in the United States who downloaded a free trial of SpeedyPC Pro and thereafter purchased the full version between October 28, 2011 and November 21, 2014." He also proposed a subclass of class members "who reside in Illinois" and several other states.

The district court certified Beaton's class claims for breaches of the implied warranties of fitness for a particular

purpose and merchantability. On behalf of a subclass consisting only of Illinois residents, the court certified claims for fraudulent misrepresentation under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). It rejected the proposed subclass insofar as it included residents from other states, because Beaton failed to identify the relevant consumer-protection laws of those states.

The court had the benefit of dueling expert testimony before it at the time it made these certification decisions. Beaton's expert, Craig Snead, described how the free trial operated across devices. Speedy's expert, Monty Myers, disputed Snead's account. Although the court had not yet issued its ruling on the parties' cross-motions to exclude the testimony of each other's expert, it ultimately denied both motions (with minor exceptions) roughly two months later. See FED. R. EVID. 702. In that order, the court noted that it had "considered the challenged expert testimony for purposes of class certification only to the extent consistent with the rulings stated."

At that point, Speedy filed and we granted a petition for interlocutory appeal of the class certification decisions. See FED. R. CIV. P. 23(f). We note that Speedy's petition may have been untimely, but Beaton chose not to press the issue. The time limit for an appeal under Rule 23(f) is not statutory, and so a failure to abide by it does not affect our jurisdiction. See *Bowles v. Russell*, 551 U.S. 205, 210–11 (2007); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 485 (7th Cir. 2012) (holding that Rule 23(f)'s 14-day limitations period is not jurisdictional), *abrogated on other grounds by Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541 (7th Cir. 2016).

**II**

Before we reach the heart of this appeal—the district court's Rule 23 decisions—we address Speedy's more substantial preliminary objections.

A

Speedy complains that the class definitions and legal theories covered by the court's certification orders impermissibly differ from those outlined in the original complaint. Speedy first attacks the narrowing of the class from everyone in the United States who had purchased SpeedyPC Pro, to individual persons (not entities) who downloaded the free trial and purchased the licensed software over roughly a three-year period. This is nothing like what we faced in *Supreme Auto Transport, LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 741 (7th Cir. 2018), where the later proposed class greatly expanded the scope of the litigation beyond what the defendants could have imagined. We see no reason here why Speedy is prejudiced by the narrower certified definition. Speedy complains that it would have conducted discovery differently had it known about the narrowed class. See *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017). But it has not told us, either in its briefs or at oral argument, what exactly would have changed. Speedy's position is further weakened by the fact that the district court allowed additional merits discovery following its certification decision. District courts may amend class definitions either on motion or on their own initiative. See FED. R. CIV. P. 23(c)(1)(C); *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015); *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 807 (7th Cir. 2013). We

are satisfied that the court reasonably exercised its discretion in adopting its class definition.

We similarly find no reversible error in the district court's decision to certify Beaton's two implied warranty claims. It is immaterial that these legal theories were not spelled out in the initial complaint. See *Chessie Logistics Co.*, 867 F.3d at 860. As the Supreme Court and this court constantly remind litigants, plaintiffs do not need to plead legal theories. *Johnson v. City of Shelby*, 135 S. Ct. 346, 346–47 (2014) (per curiam); *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 540–41 (7th Cir. 2018); *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014). Rule 8 requires only that a complaint must set forth plausible facts that, if true, would support a claim for relief. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 8(a)(2). Even where a plaintiff initially asserts particular theories of recovery, unless the change unfairly harms the defendant she is allowed to switch course and pursue other avenues of relief as litigation progresses. *Chessie Logistics Co.*, 867 F.3d at 859; *Whitaker v. Milwaukee Cnty.*, 772 F.3d 803, 808 & n.18 (7th Cir. 2014). Here, the court's certification of the implied warranty claims was permissible as long as Beaton's allegations were plausible and Speedy had fair notice of what this suit was about. See *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 517 (7th Cir. 2015). We note as well that applicable law is no longer in dispute, as the parties now agree that the implied warranty claims derive from the Agreement, which chooses the law of British Columbia.

Beaton's complaint describes Speedy as a company that sells software products. He alleges that it marketed SpeedyPC

Pro in the hope of persuading consumers to purchase the software to fix their computers. And he asserts that customers relied on the company's expertise and representations that the software would improve their devices. For present purposes, this is enough to provide fair notice that he intends to pursue warranty claims under the law of British Columbia. See R.S.B.C. 1996, ch. 410, § 18(a)–(b). It is hard to imagine how Speedy suffered any "unfair surprise," given that the "legal basis for liability is based on the same allegations" about the sale of worthless software. *Whitaker*, 772 F.3d at 809 & n.19. Though Speedy insists that it is worse off because it cannot move to dismiss on the ground that the Agreement expressly disclaimed these implied warranties, there is no final judgment in this case. Nothing prevents Speedy from pursuing this point on remand.

B

Next, we briefly consider Speedy's assertion that Beaton is judicially estopped from seeking relief under the law of British Columbia because initially he argued for Illinois law. Equitable estoppel requires that: (1) the party's later position is clearly inconsistent with her earlier one; (2) the party successfully persuaded the court to adopt her first position; and (3) the party would be unfairly advantaged if not estopped. *Janusz v. City of Chi.*, 832 F.3d 770, 776 (7th Cir. 2016).

Speedy forfeited its estoppel argument by not raising it before the district court. *1st Source Bank v. Neto*, 861 F.3d 607, 611–12 (7th Cir. 2017). It merely acknowledged that Beaton changed his position on whether British Columbia or Illinois law controlled his contract claims.

Even on the merits, Speedy's estoppel theory falls short. It is true that Beaton flip-flopped his position on the source of his implied warranty claims, and so the first criterion for estoppel may be met. In his opposition to the motion to dismiss for *forum non conveniens*, Beaton argued that "[n]one of [his] claims are based upon [the Agreement]." But by the time he sought class certification, he sang a different tune, conceding that the implied warranty "claims derive from the End User License Agreement." Still, the other two factors necessary for estoppel are missing. Beaton may have defeated Speedy's motion to dismiss for *forum non conveniens*, but he did not persuade the district court that Illinois law controlled. The court thought that British Columbia law *may* not apply to Beaton's contract claims because they "have little or nothing to do with the terms of the [Agreement]." But ultimately the court found that this question did not matter for class certification and so could safely be postponed. And in any event, we cannot see how Beaton could derive an unfair advantage by agreeing to apply the substantive law that Speedy wanted all along.

## C

Speedy also contends that the district court lacks personal jurisdiction over the claims of class members from states other than Illinois. Its argument relies on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773 (2017). In that mass-tort action, there was no connection between the forum and the specific claims at issue. Under those circumstances, the Supreme Court held that a state court lacks specific jurisdiction over

non-resident plaintiffs' claims against non-resident defend-ants. *Id.* at 1781–82. Speedy seems to be asking us to extend *Bristol-Myers Squibb* to nationwide class actions.

While briefing the issue now before us—class certification—in the district court, neither party raised personal jurisdiction. Thus, we have no need to opine on this question, because it does not bear directly on our determination. See *Abelesz v. OTP Bank*, 692 F.3d 638, 652–53 (7th Cir. 2012) (a court's personal jurisdiction and class certification decisions were "only tangentially related" and so the former could not be evaluated on a Rule 23(f) appeal (quoting *Poulos Caesars World, Inc.*, 379 F.3d 654, 671–72 (9th Cir. 2004))). On remand, Speedy is free to explain if and how it preserved this point and how *Bristol-Myers Squibb* applies in these circumstances. For his part, Beaton will be free to contend that Speedy waived this defense through its conduct. See, *e.g.*, *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 848 (7th Cir. 2012). On a Rule 23(f) appeal, it is not for us to take the first bite of this apple.

## III

Now we turn to the main event: the district court's decision to certify the nationwide class and the Illinois subclass. To certify a class under Federal Rule of Civil Procedure 23, a district court must rigorously analyze whether the plaintiff satisfies the rule's requirements. *Blow v. Bijora, Inc.*, 855 F.3d 793, 806 (7th Cir. 2017). Rule 23(a) sets forth four universal requirements for class actions: "numerosity, typicality, commonality, and adequacy of representation." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(b) then identifies particular types of classes, which have different criteria. Where, as here, certification is sought

under Rule 23(b)(3), common questions of law or fact must predominate over individual inquiries, and class treatment must be the superior method of resolving the controversy. *Id*.

In evaluating these factors, the court must go beyond the pleadings and, to the extent necessary, take evidence on disputed issues that are material to certification. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675–76 (7th Cir. 2001). At this early stage in the litigation, the merits are not on the table. *Abbott*, 725 F.3d at 810 (describing class definition as a "tool of case management"); *Messner*, 669 F.3d at 811 (class certification should not be turned into a "dress rehearsal for the trial on the merits"). Beaton bears the burden of showing that each requirement is met by a preponderance of the evidence. *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016).

We review the district court's class certification orders deferentially, leaving considerable room for the exercise of judgment unless the factual determinations are clearly erroneous or there are errors of law. *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 498 (7th Cir. 2013).

## A

Speedy complains generically that the district court failed to give its evidence adequate attention. We see no basis for that accusation. The court referred to Beaton's pleadings in providing the case's background, and then it considered evidence submitted by Beaton and Speedy. A district court may abuse its discretion by omitting key factual and legal analysis. See *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 661 (7th Cir. 2017). But it has no obligation to describe every part of the record.

Speedy also specifically challenges the district court's findings on commonality, typicality, and adequacy of representation for purposes of Rule 23(a). (It concedes that numerosity is not at issue.) We consider each of these in turn.

B

To satisfy the commonality requirement found in Rule 23(a)(2), there needs to be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity. *Bell*, 800 F.3d at 374. The district court identified several such issues:

- Can the customers avail themselves of any implied warranties, or is the Agreement's disclaimer valid?

- What functions did the marketing materials represent that the software would perform?

- Did the software perform those functions?

Speedy takes exception to some of these questions, but most are amenable to class-wide resolution. See *Nikka Traders Inc. v. Gizella Pastry Ltd.* (2012), D.L.R. 4th 120, para. 65 (Can. B.C. Sup. Ct.) (describing the elements of claim for the implied warranty for fitness for a particular purpose); *Dream Carpets Ltd. v. Sandhedrai*, [2009] B.C.W.L.D 5070, para. 68 (Can. B.C. Prov. Ct.) (elements for implied warranty of merchantability); *Dubey v. Pub. Storage, Inc.*, 395 Ill. App. 3d 342, 353 (2009) (same for ICFA). And we can see additional common questions, including whether Speedy typically deals in goods related to this software and whether a reasonable consumer

would be deceived by the advertisements' representations. Commonality is easily satisfied.

C

Second, we consider typicality. See Rule 23(a)(3); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). This requires us to evaluate whether Beaton's claims arise from the same events or course of conduct that gives rise to the putative class members' claims. The individual claims may feature some factual variations as long as they "have the same essential characteristics." *Id.* (citation omitted).

The district court thought this requirement satisfied because Beaton "appears to have seen the same representations as the other users of Speedy's free software, and the software appears to operate in the same way on each computer." Unlike Speedy, we do not take exception with the court's use of the word "appears" to describe the match between Beaton's claim and that of the other class members. This semantic choice suggests only that the court's determinations are preliminary, as they should be. See *Messner*, 669 F.3d at 811.

On the merits, neither of the court's findings reflects an abuse of discretion. We begin with the finding that Beaton saw the same representations as other users. Speedy emphasizes that some customers bought the software through third-party platforms, which could advertise as they saw fit. Yet the advertisements in the record, drawn from various sites, feature almost identical language. The class members were thus exposed to the same message (and promises) from Speedy.

Next, we turn to the court's determination that the free trial operated the same way across devices. Based on a review

of the free trial's source code, Beaton's expert, Snead, concluded that the software was programmed to operate uniformly on all PCs, independent of any differences among individual devices. He asserted that the software universally reported "problems" and "errors," mislabeled innocuous and routine features, and issued a low performance rating before any scan had begun. In his view, the scan failed to account for factors that do influence a device's performance, and it incorporated factors that have no impact. Speedy's senior director of technical operations confirmed that the scan identified as problems characteristics that might not affect performance.

Speedy asks us to reject this evidence because Snead examined only the source code for the free trial's scanning portion, as opposed to the scanning or repair portions of the licensed software. It is not clear how similar the two scanning programs are, but that does not matter for our purposes. The district court was entitled to credit the evidence indicating that the free trial scan software did not differentiate between devices before declaring them to be in "critical condition." This is sufficient to show that Beaton's claims are typical. He focuses on Speedy's uniform (alleged) misrepresentation of computer health to induce users to buy its product. Though Speedy issued 19 different versions of the software during the class period, Snead opined that "the primary features and functionality remained consistent" across versions. Speedy's expert, Myers, disagreed with Snead's conclusions, and the company pointed to positive survey responses and third-party reviews to argue that Beaton's experience was atypical. But that just indicates that there are merits issues to be resolved. For class certification purposes, the district court needed only to find by a preponderance of the evidence that the software scanned Beaton's device in the same way as it

scanned other class members' computers. We see no reason to reject its conclusion.

But, Speedy argues, the district court did not say out loud that it weighed both expert reports and found Snead's conclusions more persuasive. In fact, the court did not mention Myers's report at all. Speedy sees this as a glaring omission because the court had yet to rule on the Rule 702 cross-motions. It points out that a district court should not certify a class, and thereby raise the stakes of the litigation, based on faulty opinion evidence. Instead, it "must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion," if the "expert's report or testimony is critical to class certification." *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 814–15 (7th Cir. 2010). Speedy concludes that the court erred by not doing so.

If this was error (a point we need not resolve), it was harmless. See *Messner*, 669 F.3d at 814. In its Rule 702 ruling, the district court made clear that it had considered only the expert testimony it later deemed admissible. Speedy gives us no reason to doubt the district court's assurance. And it is also worth recalling that the district court permitted additional merits discovery after its certification decision. Had Speedy wished to pursue the expert qualifications issue further, it could have done so. We thus find no abuse of discretion in the court's ruling on typicality.

D

The last requirement is adequate representation. See FED. R. CIV. P. 23(a)(4). A named plaintiff must be a member of the putative class and have the same interest and injury as other members. *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir.

2017). A representative might be inadequate if he is subject to a substantial defense unique to him. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726, 728 (7th Cir. 2011).

The district court generously characterized Speedy's adequacy challenge as "scattershot." We need not catalog every objection Speedy raises, but we have considered all of them, and we will mention a few. First, Speedy claims Beaton is not actually a class member because he did not purchase the software as an individual. It cites the credit card statement billing the charge to Beaton's business, Chlorine Free Products Association, for which he was the sole shareholder. But Beaton averred in his declaration that he purchased the software for a laptop that he personally owned and used for primarily personal reasons. The software subscription was in Beaton's name. The district court did not clearly err in finding that Beaton purchased the software in his personal capacity.

Next, Speedy accuses Beaton of spoliating evidence—an act that (it says) makes him an inadequate representative. But spoliation is a harsh word for what happened (or so the district court could conclude). Beaton deleted a potentially useful email and took his laptop to an IT professional for repairs, where his data were lost when the hard drive was reformatted. The district court rejected Speedy's interpretation of this incident when it denied Speedy's motion for sanctions. It found as a fact that Beaton did not intend to destroy evidence. Speedy offers no reason for us to revisit that conclusion.

Speedy also launches a multipart attack on Beaton's credibility. It makes much ado of Beaton's decades-old manslaughter conviction. But assaults on the credibility of a named plaintiff must be supported by *admissible* evidence. *Id.* at 728. Wholly unrelated criminal history does not fit that bill.

See FED. R. EVID. 609(b) (a conviction's probative value must substantially outweigh its prejudicial effect in order to introduce it to impeach a witness over 10 years after his release); *e.g.*, *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008).

Beaton's various "lies" during discovery underlie Speedy's next attempt to discredit him. Some of these alleged discrepancies are minor, such as his omitting a marijuana conviction when asked about his criminal background. Beaton's supposed inconsistency in describing his laptop usage—that he uses his laptop primarily for personal reasons but also for business ones—is nothing of the sort; in fact, his statements are consistent. Speedy does, however, point out one relevant discrepancy. In both the complaint and his first set of interrogatories, Beaton professed to have purchased the software for $39.94, while his credit card statement says that he paid only $9.97. The district court did not abuse its discretion, however, in concluding that Beaton's credibility was not *severely* undermined by this detail. See *CE Design*, 637 F.3d at 728. We see no reason to disturb the court's determination that Beaton was an acceptable class representative.

Speedy also throws barbs at plaintiff's counsel, Edelson PC, citing allegations of wrongdoing made against the firm in another case. Yet Speedy points to no evidence that Edelson is unqualified, has created a conflict between the firm and the putative class, or has violated a specific ethical rule. Speedy may dislike Edelson PC, and we can assume it is not a fan of class actions, but "general distaste for the class-action device" will not preclude certification. *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 912 (7th Cir. 2003). Nothing in this record persuades us to consider Speedy's request for sanctions under Federal Rule of Appellate Procedure 38. The request is, in any

event, procedurally irregular: Rule 38 requires sanctions requests to be filed in separate motions, see *Vexol, S.A. de C.V. v. Berry Plastics Corp.*, 882 F.3d 633, 638 (7th Cir. 2018), and it does not contemplate sanctions against *appellees*.

## IV

After clearing the hurdles posed by Rule 23(a), a person wishing to bring a class action must also demonstrate that the action fits under one of the three subsections of Rule 23(b). As we said, the only one that applies to Beaton is Rule 23(b)(3), the common-question variant. It requires the putative class representative to show that questions of law or fact common to the class members predominate, and that the class device is the superior method for adjudicating those claims.

## A

The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues. *Messner*, 669 F.3d at 815. This requires more than a tally of common questions; the district court must consider their relative importance. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). On the other hand, not every issue must be amenable to common resolution; individual inquiries may be required after the class phase. *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 922 (7th Cir. 2016).

Speedy identified 10 individual issues that allegedly defeated predominance. The district court was not persuaded. It found that some were best addressed on a class-wide basis, and they outweighed the remaining individualized inquiries.

The district court did not abuse its discretion in so concluding. For example, it will be easy to ascertain from whom the class members purchased the software. The court found

that they all bought it through the portal at the end of the free trial that redirected customers to two payment platforms. Similarly, the court found that users saw the same representations about the software's capabilities, and so a common answer to the question whether a reasonable customer would be deceived is possible. And based on the court's preliminary determination that the software's diagnostic mechanisms operated uniformly across devices, the trier of fact could reach a single answer on the software's functionality and value. Speedy insists that the court needs to inquire individually about each customer's level of satisfaction with the product. But dissatisfaction is not an element of any of the certified claims. If the product truly serves none of its functions, its users' subjective satisfaction is likely evidence of misrepresentation, not that the users were not harmed. See *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 750–51 (7th Cir. 2011) (purchasers suffered financial loss by paying more for products than they would have had they known the products' true quality).

Admittedly, some individualized questions remain. For instance, what was the class member's purpose (business or personal?) in buying the software? Did the class member seek a refund? What are each customer's damages? Speedy reminds us that we have frowned upon class treatment as a poor fit for warranty and fraud claims because they can involve so many individualized issues. See *Szabo*, 249 F.3d at 674. But these theories do not automatically fail the predominance test. See *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (certain consumer-fraud cases readily establish predominance); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759–60 (7th Cir. 2014) (the fact that "[e]very consumer fraud case involves individual elements" does not preclude class actions). Speedy misreads Supreme Court precedent in arguing

that *liability* with regard to all class members must be resolved in a single stroke. See *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (requiring resolution in "one stroke" of a "common contention" central to the common claim); see also *Suchanek*, 764 F.3d at 759–60; *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010).

The district court recognized that individualized inquiries could be handled through "streamlined mechanisms" such as affidavits and proper auditing procedures. We agree. Defendants' due process rights are not harmed by such case-management tools. *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 667–72 (7th Cir. 2015). Speedy's attempts to distinguish *Mullins* as merely about proving class membership, and not liability, are unavailing. The company makes the obvious point that it can neither cross-examine an affidavit nor depose every class member. But Speedy will still have the opportunity to challenge the class members' credibility. See *Mullins*, 795 F.3d at 671. It can obtain the testimony of a representative sample of the class members and, if necessary, present evidence contradicting statements found in particular affidavits.

Speedy also contends that there is a fatal lack of uniformity in the purpose for which each person acquired its software. We do not see that as a barrier to class treatment, however. It is true that the law of British Columbia insists that a particular purpose be brought clearly to the seller's attention. Compare *Kobelt Mfg. Co. v. Pac. Rim Engineered Prods. (1987) Ltd.* (2011), 84 B.L.R 4th 189, para. 104 (Can. B.C. Sup. Ct.) (leaky brakes did not violate an implied warranty because no implied communication that purchasers intended to use

the brakes on drawworks), with *Wharton v. Tom Harris Chevrolet Oldsmobile Cadillac Ltd.* (2002), 97 B.C.L.R. 3d 307, para. 59–60 (Can. B.C. App. Ct.) (buzzing sound system violated implied warranty where salesman knew purchasers wanted a luxury vehicle). But we do not see that flaw here. The people who used the free trial and then bought SpeedyPC Pro were all concerned about the health and performance of their computers. Why they owned a computer is beside the point. To the extent it is relevant, each user's specific reason for buying the software can be established through affidavits, subject to the defendant's right to challenge them with evidence.

### B

Finally, the district court had several reasons for concluding that a class action was the superior way to resolve this dispute. All are well-supported. First, common questions of fact and law predominate. Speedy insists that we should categorically reject class treatment for implied warranty and consumer fraud claims because of the choice-of-law clause. See, *e.g., Szabo*, 249 F.3d at 674; *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1020 (7th Cir. 2002). But that makes no sense here, since all parties agree that British Columbia law controls for the nationwide class and Illinois law for the subclass. And there is no risk of inconsistent rules with respect to recognition of the contractual choice-of-law clause, because that follows the forum, Illinois. See *Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2016).

Second, the amount of damages to which each plaintiff would be entitled is so small that no one would bring this suit without the option of a class. *Suchanek*, 764 F.3d at 759–60. "Rule 23(b)(3) was designed for situations such as this, in

which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). The fact that others have not sued over this software is more likely because "only a lunatic or a fanatic sues for $30," *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004), than it is because the software is flawless. Consumer class actions are a crucial deterrent against the proliferation of bogus products whose sticker price is dwarfed even by a court filing fee (now $400 for a civil case in federal district court). Though punitive damages may also deter, few litigants would risk filing suit on the off-chance that punitive damages would be recovered after years of litigation. See *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 677–78 (7th Cir. 2013). The district court did not abuse its discretion in finding the class-action device superior.

## V

Defendants spend much time and money fighting Rule 23 certifications to the hilt. Yet "certification is largely independent of the merits … and a certified class can go down in flames on the merits." *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). We say this not to imply that the merits in this case favor either party, but simply to remind defendants that the class-action glass is sometimes half-full: dismissed claims of a certified class end litigation once and for all. That, after all, is why settlement classes are so popular.

Finding no abuse of discretion in the district court's decisions to certify the nationwide class and the Illinois subclass, we AFFIRM the court's certification orders.